THIS was a petition and summons, brought by the President, Directors and Company of the Bank of Kentucky, against Grey and Powers, upon a note executed by the defendants to Carver Mercer, payable and negotiable at the Springfield Branch Bank, and endorsed by Mercer to the plaintiffs.
2. The defendants filed three pleas, in two of which, they attempt to show, that the note on which the suit was brought, was executed by them under the influence of mistake and without consideration ; and by the other they allege, in general terms, that the note was executed without any good or valuable consideratioh. To each of these pleas the plaintiffs deronrred; and the circuit court having sustained the demurrers, and given judgment tor the plaintiffs, the defendants have appealed to this court.
The only question material to be noticed is, whether the want of consideration for the execution of the note, is an admissible defence to the action or not ?
<l,iestion, obviously depends upon the chara6-ter of the note. If it is to be treated as a mere common law instrument, the want of consideration is clearly a good defence ; but on the contrary, if it is to be considered, as being placed upon the footing of a bill of exchange, then it is equally clear, that the want of consideration cannot.be alleged in bar of the action. For although in an action upon a bill of exchange, by one party against another from whom he received it, as by the payee against the drawer, or by the endorsee against his immediate endorser, the want of consideration is a sufficient defence; yet, it is well settled as a general rule, that where there exists no privity be. tween the parties to the suit, as where thé action is brought, as in this case, by the endorsee against the *379 drawer of the bill, the want of consideration is an inadmissible defence. ‘
From the endorsement to the bank, the law will imply that the note was discounted by the bank. 1 Dig. 144.
’ 3. That the note in this case must be considered as being placed on the footing of a bill of exchange, is evident. By the 13th section of the act to incorporate a §tate Bank ; “ Notes discounted by the corporation are placed upon the same footing as foreign bills of exchange.5'.5 And as the note was made payable and negotiable at the bank, the law will, from the endorse ment to the bank, imply that it was discounted by the bank ; and what is implied by law, peed not be alleged, and may be traversed.
It was accordingly held in the case of Bell vs. Morehead, decided Fall Term, 1830, that the circumstance that the note had been endorsed to the bank, was, per se, sufficient to place it upon the footing of a bill of exchange, and the plaintiff in the action, was permitted to treat it as such.
The judgment must, therefore, be affirmed with costs and damages.
The above opinion, was delivered June 19th, 1822. The following petition for a rehearing, was presented:
In the opinion rendered in this case, the court say, the correctness or incorrectness of the decision of the circuit court, in sustaining the demurrers to the three pleas of the appellants, must depend upon the character of the instrument sued on; that is, whether it is to be treated as a bill of exchange or not; and decide,
1. That the writing sued on is a bill of exchange, and consequently, that the general plea of want of consideration, was bad.
2. That the two special pleas do not present such facts, as to take the case out of the general rule; that the drawer of a hill of exchange, is not allowed to avail himself of the want of consideration, as a defence aa-ainst an assignee.
tin neither ox which points, can the counsel lor the appellants, agree with the court ; and for the purpose, of obtaining a reconsideration of them, they respectful, ly solicit a rehearing.
As to the first point, it was contended in the argument of this case, that whatever might have been the real nature of the transaction, as to the writing sued *380 on; that even though it might have been discounted, yet as the bank has sued upon it by petition and summons in which form of action, no averment of its having been discounted, was or could be introduced, the right of treating it as a bill of exchange lias been waived ; that as now presented to the court, it can only be considered as an ordinary promissory note. To obviate this objection, the court in the opinion rendered, say, as the note was made negotiable, and payable at the bank, it will, from tfye endorsement to the bank, imply that it was discounted, and ivliatis implied by law, need not be alleged, and may be traversed It is true,that whatever is necessarily understood, intended or implied, is traversable, though not expressly alleged ; but this must be the necessary inference of one fact, from other facts ; and that which is not necessarily inferable,' (it is equally true,) cannot be traversed. See'Chitty Plead. 586.
Now it cannot he pretended, that because the note was made negotiable and payable at the bank, and was endorsed to the bank as matter of fact, it must necessarily be inferred, that it was also discounted. For the circumstances, however much some may think they persuade, to belief, certainly do not compel the mind to any such conclusion. The endorsement is the mode by which the property in the note is transfered to the bank, and may be full evidence of ownership. But we cannot perceive, how that, which is but bare evidence of ownership or of the transfer of property, necessarily proves also, how the property was acquired, or what the means used to induce the assignment; and still less, what transaction took' place between the parties, subsequent, to the assignment. When there are at least a dozen other methods, by wh ich the bank can acquire property in this description of-promissory notes, besides tbatof discounting; and when ip every case the endorsemeritto the. bank,must beused,in order to transfer the property; by no shadow of propriety, it appears to ir-, can it hr. contended, that where a note is assigned to the bank, it must always necessarily he inferred as matter of fact, that the bank also discounted such note. Sucii a system ot judicial inference, would enable an individual to do tliat, which the bank alone can do ; or to do that by his sole act, for the doing which, the, law requires the conjoint act of both t[ie individual and the bank, *381 St would, per force, convert every species of acquisition of promissory notes by the bank, into a discounting of the notes, contrary to the hitherto undeviating opinion and practice of tlie officers of the bank, and of the community at large. If then, there be any such in. ference or intendment, arising out of the assignment of a note to the bank, it must be a legal inference, a le. gal intendment ; which according to the well éstablished doctrine of pleading, cannot mbe traversed. See Chitty Plead. 587, 1 Saund. 23, N. 5, 2 Saund. 159, 161, N. 11, Com. Dig. pleader G. 5, 3 Wilson 234. For what, is legal inference or conclusion of law, but the law itself? And if the law could be traversed, it would convert juries from triers of fact, into judges of law. Indeed the court, in a subsequent part of their opinion, say iS the circumstance of the note being endorsed to the bank, is, per se, sufficient to put it upon the footing of a bill of exchange,” and of consequence its having been discounted or not, would bean immaterial traverse. And this is precisely the point, which we conceive the court has decided in this case, and which, as such, we mean to controvert. We are not aware, by what course of reasoning, the court has come to this determination. In the opinion delivered, the court barely refer to the case of Bell vs. Morehead, as establishing that principle. That case, without furnishing any additional reasoning, refers to the case of Saunders vs. Bank of Kentucky, in which it is only decided, that the assignment to the bank 'is presump, live evidence to be left to the jury, from which to infer that it was discounted. If it were necessary to the purposes of this petition, we should dispute the correctness of even this position and earnestly contend, that the bare assignment does not, in the slightest degree, tend to prove that the note was discounted. Yet, ad. mitting the correctness of the principle, as decided in Saunders vs. Bank of Kentucky, to its fullest extent, we can by no means concede, that it warrants the doctrine established upon its authority. For there is no law better settled, than that that, w liich is mere presumptive evidence of a fact, will not authorise ale-gal conclusion of the existence of such fact. . The authorities are without number, and as old as the common law itself, to prove, that where the jury, by a special verdict, find certain facts, which though they *382 might have justified them in finding another fact, yet, if they by their verdict do not draw the inference, the ' law will not do it; neither will the court give judgment upon a verdict so rendered. The decision in this case then, so far from being warranted by that of Saunders vs. Bank of Kentucky, is rather contradicted by it, and must rest entirely upon the principle decided in Bell vs. Morehead, “ that the assignment to the bank is, per se, sufficient to put the note upon the footing of a bill of exchange,” which being the same as is decided in this case, we are compelled to dispute the correctness of it.
The court has not said, it cannot say, it will not say, in so many words, that the assigning of the note to the bank, is the same, or amounts to the same, as a discounting óf the note by the bank. Yet in every point of vie w, in which we have been able to present the subject, the opinion as delivered, does in effect, make them one and the same thing. How else can the mere act of assignment, per se, constitute the note á bill of exchange ? The statute says, the discounting of the note, and that alone, shall have the potential effect of producing this legal metamorphosis. But the court say, the assignment also, shall have the effect of operating the transmutation. How can the court say this, unless the assignment to the bank, and the discounting by the bank, are one and the same thing ? Has not the court then, in effect, said that they are one and the same? Yet this, as a proposition, when presented in plain, direct terms, is what ño one would contend for. As then, the decision of the circuit court, can only be supported by their being one and the same, and as they most certainly are not one and the same, how can the decision be supported ? '
To all this it may be answered, that the substitution of ttie assignment in lieu of the discounting, is an extent to which the court never intended to go, and to which it will be driven ; and that to prevent it, the' court will stiil’suffer the fact of discounting to be traversed, though it bo a matter of legal inference. But a slight inquiry into the consequences, which are to flow from an adherence to such a position, will demonstratively illustrate its impropriety and incorrectness. Ever since the establishment of the Bank *383 ©f Kentucky, nearly all the real transaction paper, which has been eréáted in this state between merchants, has been drawn negotiable and payable at the bank, in order to enable any holder to have it discounted, if he should so wish. Merchants, to obviate the necessity of procuring endorsers and for other reasons, are frequently in the habit of lodging such paper with the hank, as collateral security, and obtaining a discount of their own notes 5 they are also frequently assigned to and lodged in the bank, merely for collection. The bank may, and no doubt has received such paper, in the payment of property sold; in none of which cases, (besides a variety of others that might be stated,) can it be said, or has it even been considered, that the bank had discounted such paper ; nor has it been in the habit of using the diligence required, to charge the parties to a bill of exchange. No w according to the position before stated, whenever such paper is sued on, and it is made to appear by the pleadings, that it was once assigned to the bank, the inference will arise that it was discounted ; and though not alleged, the defendant will have a right to traverse that fact; the plaintiff must join issue upon it; and the proof can be easily made out, in favor of the defendant, by the books or any officer of the bank. How then is the bank ever to recover, upon such a note obtained by any of the methods alluded to ? Will an adherence, by the court, to such a position, forever preclude the bank from every species of remedy ? If the rule is a good one now, and. can1'---i-----must be equally good hereafter, and operate for the relief and benefit of B, in a similar contest. Whenever the case does occur, and the court is informed on the part of the bank, that they have, by a too liberal construction of its charter, driven the bank to the joining issue upon a fact, which must always be decided against it, and thereby precluded it from ever recovering a large amount'of debt, we know that ¿he court will be compelled to recede from such ground, and to overrule what it may be supposed to have decided in this c.ase. All we have to pray the court, then, is, not to make our clients the victims of a rule, which certainly cannot last, but must ultimately be departed from. ate to the injury of A, in a contest
*384 We trust, therefore, that we have been successful in Prov*n§ that the writing sued on, as presented by the record* ought not to be treated as a bill of exchange, and that, consequently the circuit court erred in sustaining the demurrer to the general plea of' want of consideration.
But admitting that the note sued on, was discounted, thereby made a bill of exchange of, and ought now to be treated as such ; still we contend, the decision of the circuit court ought not to be affirmed, because the facts set forth in the two special pleas, show such a state of case, as will authorise an inquiry into the consideration of the bill, as between these parties, and also, according to the decision of this court in the case of Ralston vs. Bullilts, 3 Bibb, 261, that the bank ought not to recover. The pleas, though inartificially drawn, show substantially, that this note was executed for the purpose of taking up a bill of exchange, of .which the defendants were endorsers, and from all liability on which they had been exonerated, by the laches of the bank; that no other consideration was received by the defendants, or paid by the bank for this noto j that it was executed at the request of the plaintiffs, and of course they must be considered as privy to the transaction. Chitty on bills, p. 16, 85, 87, N. 3, and the authorities there cited, show, that the rule of law, which will not permit the drawer of a bill of exchange, to avail himself of want of consideration, against a bona fide endorsee who has paid value, does not proceed from any peculiar obligatory effect attached to the instrument, qua such, but upon a principle of general policy, for the benefit of trade; that whenever it can be proved, that the holder was privy to the original transaction, and that the drawer executed the bill, without consideration, the holder does not come within the reason of the rule ; and to entitle himself to recover, he must show that he gave value for the bill. If any value, then, was paid by the bank to the - payee, in this case, that ought to have been shown by way of replication. But the pleas, under a liberal construction, will negative the idea, that any consideration whatever was paid by the bank to any of the parties to this note.
paper in question, when executed', was a promissory note, and the makers, being deceived as to their *385 liability on the bill, which the note was made to take up, were not bound to pay it. Now, can the batik who held the original bill, which bill they had so managed as to relieve the endorsers, and for which bill, so managed, the bank requested and obtained this note, not obligatory when made; can the bank, so privy to the cause of the creation of this note, make it obligatory by their own act, in procuring the assignment of it to themselves ; or, if you please, in discounting it with a knowledgeof the facts i Whether the endorsements were on it at the request of the makers, or afterwards procured by the bank, who had first request* ed and obtained the note of the makers, for the cause set forth, cannot be material.
We beseech the court only to bestow on the pleas, the same favorable interpretation, which they have bestowed upon the petition and assignment to the bank. The petition does not aver that the note was discounted ; yet the court say, it is implied from the facts set forth in the petition. The pleas set forth facts, which by implication, much stronger and much more necessarily flowing from them, negative the idea, that this note ever was discounted, or that the bank came by it, in any other manner, than by procuring it of the makers in exchange for their supposed liability on the former bill, and show tliat the making and endorsement to the bank, wras one and the same continued transaction, to take up that bill.
Upon a review of the whole case, we confidently trust, that the court will find ample grounds for grant* ing a re-hearing, and reversing the decision of the circuit court.
BIBB AND NICHOLAS, for Appellants.
But on the f8th of December the petition was overruled.